# Procedures for Exchanging Instruments of Ratification for Bilateral Law Enforcement Treaties

As long as the Attorney General is duly authorized by the President — or his delegate in the field of foreign affairs, the Secretary of State — there is no legal barrier to the Attorney General witnessing or signing a Protocol of Exchange of Ratifications on behalf of the United States. In addition, there is no legal barrier to the exchange of instruments of ratification occurring at the Department of Justice.

July 17, 1984

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

You have requested our advice regarding the procedures legally required for the exchange of instruments of ratification of certain bilateral law enforcement treaties recently concluded between the United States and other countries. We understand that the Senate has already given its advice and consent to the ratification of these treaties, and that the only questions remaining concern where, and by whom, the instruments of ratification to those treaties are required to be exchanged. We conclude that, if the Attorney General is duly authorized by either the President or his delegate (the Secretary of State), there is no *legal* impediment either to the Attorney General signing the Protocol of Exchange of Ratifications or to the signing ceremonies taking place at the Department of Justice.

As you know, a treaty enters into force in four stages. First, the treaty is negotiated. Generally speaking, in order to negotiate a treaty, a nation's representative must produce "full powers," *i.e.*, a document from the President or his delegate designating him to represent the United States in relation to the treaty. Heads of state, heads of government, and ministers of foreign affairs are generally regarded as representing the state without having to produce full powers, while heads of diplomatic missions and representatives accredited to international organizations are regarded as possessing like powers within their jurisdiction. *See Restatement (Revised) Foreign Relations Law of United States* § 310 (Tent. Draft No. 1, 1980). Thus, the President's negotiating authority with respect to bilateral treaties is ordinarily exercised in his name only by the Secretary of State, Ambassadors, or other delegates who have been provided with full powers. In this Administration, the Attorney General has been provided with the full powers necessary to sign a number of bilateral mutual criminal assistance treaties on behalf of the United States.

157

Second, the signed treaty is submitted to the Senate for its advice and consent to ratification. Once the Senate gives its advice and consent, the treaty is returned to the President, who must ratify it by signing the instrument of ratification. Third, representatives of the two nations meet to exchange the instruments of ratification, a procedure whereby each country gives notice to the other that it has completed its domestic constitutional processes for approval and entry into force of the agreement. Fourth and finally, the President "proclaims" the treaty, and by Executive Order, declares it to be in force internationally and domestically (to the extent to which it is self-executing).

The questions that you have raised regard the procedure to be followed at the third step of the procedure outlined above, namely, the exchange of instruments of ratification. Specifically, you have asked whether there is any legal barrier to the Attorney General's signing a Protocol of Exchange of Ratifications or to such a signing ceremony occurring at the Department of Justice, as opposed to the Department of State.

In the brief time available, we have uncovered no such legal barriers. The customary procedure for exchanging bilateral instruments of ratification is that the exchange occurs in the capital city of the country *other* than that in which the treaty was signed. Thus, if the United States and Italy were to sign a treaty in Rome, the treaty would usually specify that the exchange of ratifications is to take place in Washington, D.C. It is a customary practice that representatives of the two nations witness the exchange of instruments of ratification by signing a document known as a *proces verbal*, or protocol of exchange. "The protocol of exchange does not constitute a new agreement between the parties to the treaty; it merely evidences the fact that the exchange of instruments of ratification has taken place." 14 M. Whiteman, *Digest of International Law* 65 (1970). Thus, the protocol usually states that representatives of the two countries "being duly authorized by their respective Governments," have met for the purpose of exchanging instruments of ratification by the respective governments of the treaty at issue, and that the exchange has taken place, the respective instruments having been compared and found to be in due form.

Although exchanges are often done by two plenipotentiaries, *i.e.*, representatives endowed with the "full powers" described above, that practice does not appear to be legally required. In July 1974, the Department of State approved a procedure, known as the "Circular 175" Procedure, which provides internal guidelines to be followed in the United States for conclusion of international treaties. The section of that Circular concerning "Effecting the Exchange" of Ratification expressly states that:

> In exchanging instruments of ratification, the representative of the United States hands to the representative of the foreign government a duplicate original of the President's instrument of ratification. . . . A protocol, sometimes called *proces verbal* or "Protocol of Exchange of Ratifications," attesting the exchange

158

is signed by the two representatives when the exchange is made. *No full power is required for this purpose.*

Rovine, *Digest of United States Practice in International Law — 1974* 199, 209–10 (1975) (emphasis added). To us, this provision suggests that so long as the Attorney General has been "duly authorized" by the President (or his delegate in the field of foreign affairs, the Secretary of State), there is no legal barrier to the Attorney General witnessing or signing a Protocol of Exchange of Ratifications on behalf of the United States, even if the President or the Secretary of State has not otherwise conferred upon the Attorney General the "full powers" that would be required to negotiate or sign the treaty on behalf of the United States.

With respect to the place of exchange, Circular 175 states only that "it is customary for a treaty to contain a simple provision to the effect that the instruments of ratification shall be exchanged at a *designated capital*," *id.* at 209 (emphasis added), without anywhere specifying in which building within the capital the exchange must take place. Assuming that the treaties with which you are concerned specify that the exchange of ratifications must occur in Washington, D.C., we see no legal impediment to that exchange occurring at the Department of Justice, rather than at the Department of State. We express no view, of course, as to whether protocol or custom might dictate otherwise with respect to either of the points discussed above.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

159